## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

FIRST TIME VIDEO, LLC      :      CASE NO.  10 CV 6254
     :
       Plaintiff      :
     :
v.      :      **MOTION TO QUASH SUBPOENA**
     :
DOES 1-500      :
     :
       Defendants      :

Now comes Doe (name withheld) by and through the undersigned counsel and hereby moves this Court to quash a subpoena issued by Plaintiff to Verizon Wireless seeking confidential information relating to certain IP addresses. A copy of the subpoena is attached hereto as Exhibit A.

After issuance of the subpoena, Verizon Wireless notified Doe (name withheld) indicating that the IP addresses identified in the subpoena may be connected to an account of Doe. For the reasons set forth in the Memorandum attached hereto, Doe respectfully requests this court quash the attached subpoena.

Respectfully submitted,

/s/ David T. Grisamore
David T. Grisamore #34507
53 W Jackson Blvd. Suite 1643
Chicago, IL 60604
Telephone:      (312) 913-3448
Facsimile:      (312) 913-3458
Email:      dgriz67@sbcglobal.net

## INTRODUCTION

This Court's ruling on whether Plaintiff will be able to obtain the identity of Doe may be the last chance that the Court has to ensure that the Doe is treated justly and that Doe will not be induced to settle by the fear of embarrassment or humiliation, or Plaintiff taking advantage of Does by filing suit in an inconvenient forum.

Luckily, the federal courts have safeguards, both procedural and substantive, to protect defendants' rights. Most importantly for this case given the subject matter of the media at issue, those safeguards include a careful process for determining whether the anonymity of an online speaker must be abridged. Those safeguards apply in all litigation regardless of the legal claims made and should be applied here as well.

Unfortunately, the Plaintiff in this mass copyright case has not followed several safeguards developed by the federal courts, violating the legal rights of the Doe. The first of those safeguards is personal jurisdiction. Plaintiff's own factual allegations show that almost all of the Doe Defendants are located outside this Court's jurisdiction and do not appear to have sufficient contacts with the Northern District of Illinois to support being haled into court here. The second safeguard is joinder. Plaintiff has improperly joined 500 unrelated Defendants into this single action, jeopardizing their right to an individual evaluation of their actions and defenses. Finally, Plaintiff has not meet the First Amendment protective legal test for the discovery the identity of persons who have communicated anonymously online and has failed even to articulate the correct test. As explained (for example) last year in *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009), individuals who communicate anonymously online may be identified only if a plaintiff meets a multi-factor test designed to balance the right to seek redress for legitimate claims against the fundamental right to

communicate anonymously. As demonstrated below, Plaintiff has not met that standard.

For any of these three reasons, the motion to quash the attached subpoena should be granted.

## ARGUMENT

I.     **Plaintiff Has Not Established that the Court Has Personal Jurisdiction Over Doe.**

As a threshold matter, Plaintiff has not met its burden to establish that this Court has personal jurisdiction over the vast majority of the Defendants. Consequently, the Court may not authorize or enforce any discovery Plaintiff seeks about or directed at those Defendants. *See, e.g., Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 470-471 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction). *Accord, United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1084 (1st Cir. 1992) (same).

The constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Accordingly, the Plaintiff bears the burden of pleading specific facts sufficient to support the Court's exercise of personal jurisdiction over Doe. Simply reciting personal jurisdiction requirements is not enough, nor are the assertions of naked legal conclusions; rather, Plaintiff must assert the factual basis

underlying its claims. *See, e.g., Clemens v. McNamee,* 615 F.3d 374, 378 (5th Cir. 2010) (holding that 'plaintiff bears the burden of establishing personal jurisdiction and that burden is met by making a *prima facie* showing.' ).

Plaintiff has offered a most tenuous theory for the Court's exercise of personal jurisdiction over the Defendants: that "each Defendant . . . distributed and offered to distribute over the Internet copyrighted works . . . [and] [s]uch unlawful distribution occurred in every jurisdiction in the United States, including this one." (Complaint, ¶ 7). Plaintiff has not made a *prima facie* showing for that allegation for Doe or any of the Defendants. Absent a *prima facie* showing, Plaintiff's effort to discover the identity of Doe should be denied.

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, suit in the forum at issue must be consistent with the requirements of the Due Process Clause. Accordingly, a plaintiff must demonstrate that: (1) the non-resident has minimum contacts with the forum and (2) requir[ing] the defendant to defend its interests in that state does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U. S. 310, 316 (1945). *See also Burger King Corp. v. Rudzewicz,* 471 U. S. 462, 474-77 (1985). Plaintiff has not met this burden.

As discussed above, the only jurisdictional fact identified by the Plaintiff *(i.e.,* the IP addresses it associates with each Defendant) give no indication that the alleged copyright infringement occurred in this state. Plaintiff provides no additional evidence. Without any *prima facie* evidence to support the claim that the alleged infringement took place within the state, Plaintiff has not established minimum contacts and therefore this Court cannot exercise personal jurisdiction over the Doe Defendants. *See, e.g., Enterprise Int'l,* 762 F.2d at 470-471 (no authority to issue preliminary relief without personal jurisdiction).

To the extent that Plaintiff is suggesting a more expansive theory of personal jurisdiction based on the cross-border accessibility of information on the Internet as a whole, that argument too must fail on the basis of insufficient contacts between Doe and this jurisdiction. As early as 2002 courts have rejected the claim that the mere fact that the Internet permits access to information by residents of every state as well as other countries means that the person engaged in that activity can be sued anywhere in the United States. As the Fourth Circuit explained in *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. Under this argument, the electronic transmissions symbolize those activities ... within the state which courts will deem to be sufficient to satisfy the demands of due process. But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.
> In view of the traditional relationship among the States and their relationship to a national government with its nationwide judicial authority, it would be difficult to accept a structural arrangement in which each State has unlimited judicial power over every citizen in each other State who uses the Internet. ... That thought certainly would have been considered outrageous in the past when interconnections were made only by telephones.. .. But now, even though the medium is still often a telephone wire, the breadth and frequency of electronic contacts through computers has resulted in billions of interstate connections and millions of interstate transactions entered into solely through the vehicle of the Internet.

*Id.* at 712-713 (citations omitted).

Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action

cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. *Id.* at 714.

The Fifth Circuit embraced this approach in *Revell v. Lidov,* 317 F.3d 467 (5th Cir. 2002). In *Revell,* a retired Associate Director of the FBI sued over alleged defamation in an article placed in the Columbia Journalism Review that was on the Review's web site. Although the article pertained to events that occurred when Revell was in the FBI's Washington, DC office, he filed suit in Texas where he had retired. Neither defendant (Lidov and Columbia University), however, was aware that Revell was living in Texas at the time of publication. The Fifth Circuit held that suit could not be brought in Texas even though Revell would suffer the brunt of his harm there and even though, had defendants known he was in Texas, they would have known that the brunt of the harm would be suffered there:

> Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test. The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum, as *Calder* itself and numerous cases from other circuits applying *Calder* confirm. Demanding knowledge of a particular forum to which conduct is directed, in defamation cases, is not altogether distinct from the requirement that the forum be the focal point of the tortious activity because satisfaction of the latter will oftentimes provide sufficient evidence of the former.

*Id.* at 475-476. *See also Fielding v. Hubert Burda Media,* 415 F.3d 419, 424 (5th Cir. 2005) (citing *Revell).*₅

In the immediate case, even assuming that Doe had knowledge of Plaintiff's copyright, there is no evidence that Doe was aware of any a connection to this jurisdiction.

Consequently, Plaintiff has made no *prima facie* showing that Doe – or any of

the Defendants -- had any idea that Plaintiff would suffer any harm in Illinois.

Requiring individuals from across the country to litigate in this District creates exactly the sort of hardship and unfairness that the personal jurisdiction requirements exist to prevent. It requires the defendants urgently secure counsel far from home, where they are unlikely to have contacts. In this particular instance the hardship is very clear. When the underlying claim is a single count of copyright infringement, the cost of securing counsel even to defend a Defendant's identity is likely more than the cost of settlement and possibly even more than the cost of judgment if the Defendant lost in the litigation entirely.

Plaintiff's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after. To the extent that Plaintiff argues that it should be granted leave to seek discovery in support of its jurisdictional allegations, this effort too must fail.

When seeking discovery on personal jurisdiction, a plaintiff is required to make a "preliminary showing of jurisdiction" before she is entitled to discovery. *See, e.g., Fielding,* 415 F.3d at 429 (stating that a plaintiff's discovery request should be granted if the "plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts"); *Cable Electronics, Inc. v. North America,* No. 3:08-CV-0433-M, 2009 WL 2382561, at *2 (N.D. Tex. 2009), (citing *Fielding).* However, it is well within the district court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction; "fishing expeditions" into jurisdictional facts are strongly disfavored. *See, e.g., Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir. 2003); *Base Metal Trading, Ltd. v. OJSC 'Novokuznetsky Aluminum Factory,* 283 F.3d 208, 216 n. 3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of

discovering some basis of jurisdiction"). Where, as here, the Plaintiff's own factual allegations plainly serve only to demonstrate the absence of proper jurisdiction, the Court should decline to extend this case further.

## II. Plaintiff Has Improperly Joined Doe with Hundreds of Other Defendants Based on Entirely Disparate Alleged Acts.

There is little doubt that Plaintiff's joinder of 500 Defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder has been disapproved by federal courts in copyright infringement cases based on computer downloads before. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.
>
> *BMG Music v. Does 1-203,* 2004 WL 953888, at *1 (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. Specifically:

> Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met: (1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or

series of transactions or occurrences"; and (3) there must be a common question of fact or law common to all the defendants. *Id.*

Joinder based on separate but allegedly similar behavior by persons using the Internet to commit copyright infringement has been rejected by courts across the country. For example, the District Court for the Western District of Texas denied efforts by recording industry plaintiffs to join 254 defendants accused of infringing their copyrights by illegally downloading music, stating:

> The claim is against each defendant is individual, based on individual acts of each defendant, and if proven, will result in unique damage claims. The defendants are not properly joined under Rule 20.

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004), (Exhibit A to RJN) (dismissing without prejudice all but the first of 254 defendants accused of unauthorized music file-sharing). Similarly, in *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ('P2P') networks to commit the exact same violation of the law in exactly the same way. The court explained: [M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the district court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. *See also, e.g., Interscope Records v. Does 1-25*, No. 6:04-cv197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where

only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12,* No. C-04-04862 (N.D. Cal. Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery to identify first Doe defendant but staying case against remaining Does until plaintiff could demonstrate proper joinder) (Exhibit B to RJN).

Plaintiff may argue that its allegations here are based upon use of the Internet to infringe the same movie. Such an argument does not change the analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated Defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. This kind of attenuated relationship is not sufficient for joinder. *See, e.g., BMG Music v. Does 1-203,* 2004 WL 953888, at *1.

Even if the requirements for permissive joinder under Rule 20(a)(2) had been met, this Court would have broad discretion to refuse joinder or to sever the case under Rule 21 in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. *See, e.g., Acevedo v. Allsup's Convenience Stores,* 600 F.3d 516, 521 (5th Cir. 2010) (citing *Applewhite v. Reichhold Chems.,* 67 F.3d 571, 574 (5th Cir. 1995)), *Morris v. Northrop Grumman,* 37 F. Supp. 2d 556, 581 (E.D.N.Y.1999), and *Coleman v. Quaker Oats,* 232 F.3d 1271, 1296 (9th Cir.2000)). The Court should at minimum exercise that discretion here. Joining hundreds of unrelated defendants in one lawsuit here may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-

established joinder principles need not be followed. Because this improper joining of these hundreds of Doe Defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the Defendants and drop the movant from this case. *See* Fed. R. Civ. P. 21.

## III. Plaintiff Has Not Satisfied the Requirements Imposed by the First Amendment On Litigants Seeking to Unmask Anonymous Speakers.

Plaintiffs are often allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong. However, Doe wishes to apprise the Court of the appropriate discovery standard in cases where, as here, Defendants were engaging in anonymous communication and Plaintiff's claims arise from those activities. Especially given the number of Doe Defendants affected and the pornographic nature of the movie in question, it is crucial that the Court apply the correct procedure here and require Plaintiffs to follow the appropriate procedures before individuals' identities are disclosed.

### A.    The Right to Engage in Anonymous Speech is Protected by the First Amendment.

The United States Supreme Court has consistently upheld the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation .. . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n,* 514 U. S. 334, 357 (1995); *Buckley v. Am. Constitutional Law Found.,* 525 U. S. 182, 192 (1999); *Talley v. California,* 362 U.S. 60, 64 (1960). This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site. *Reno v.*

*ACLU,* 521 U.S. 844, 870 (1997) (there is no basis for qualifying the level of First Amendment scrutiny that should be applied to the Internet). *See also, e.g., Doe v. 2themart.com,* 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (stating that the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights. *See Sony Music Entm 't Inc.,* 326 F. Supp. 2d at 564 (The use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection.). *See also, e.g., In re Verizon Internet Servs. Inc.,* 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds,* 351 F.3d 1229 (D.C. Cir. 2003); *Interscope Records v. Does,* 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-4,* No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006).

In *Sony,* the court concluded that a file sharer is "making a statement" by downloading a work without charge or license. *Sony,* 326 F. Supp. 2d at 564. In addition, a file sharer is expressing himself through the selection of content and by making it available to others. *Id.* Although sharing creative content is not "political expression" entitled to the "broadest protection," a file sharer is still entitled to "some level of First Amendment protection." *Id.*

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege. Courts must "be vigilant ... [and] guard against undue hindrances to . .. the exchange of ideas." *Buckley,* 525 U. S. at 192. Just as in other cases in which litigants seek information that may

be privileged, courts must consider the privilege before authorizing discovery. *See, e.g., Sony,* 326 F. Supp. at 565 ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."); *Grandbouche v. Clancy,* 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a realistic chance of being successful. The identification of an anonymous speaker is a form of relief to the plaintiff (because it can enable extra-judicial self-help such as that seen in these mass lawsuits), and it harms the anonymous defendant, because once the right of anonymous expression is taken away, it cannot be recovered. An order that benefits the plaintiff and hurts the defendant is not customarily given without some proof of wrongdoing. Finally, if the Court allows anonymous speakers to be identified any time someone is willing to pay the filing fee for a lawsuit, we risk creating a significant chilling effect for anonymous speakers who are worried about the improper consequences of having their identities revealed.

On the other hand, the protection of anonymity should not be so great that plaintiffs with meritorious legal claims are unable to obtain redress of their grievances. If the rules make it too difficult to identify anonymous speakers, even when their speech abused the rights of others, the rules will unduly encourage irresponsible online speech. The need, therefore, is for the preservation of a legal and procedural standard that balances the rights

of the anonymous speaker who claims to have done no wrong and the rights of the allegedly wronged speaker.

Put in constitutional terms, the constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue meritorious litigation. *See, e.g., Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) (Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection.). However, litigants may not use the subpoenas to uncover the identities of people without an appropriate basis. Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one at hand have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

Instead, courts rely on the seminal case of *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001) in which the New Jersey Appellate Division adopted a four-prong test for protecting anonymous speakers. Under *Dendrite*, a plaintiff must:

1) make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

2) set forth the exact actions of each Doe defendant that constitute actionable cause;

3) allege all elements of the cause of action and introduce prima facie evidence for each Doe defendant sufficient to survive a motion for summary judgment; and

4) assuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed. *Dendrite*, 775 A.2d at 760-61. The *Dendrite* test most accurately and

14

cogently outlines the important First Amendment interests of the Doe defendants and should be applied here.

**B. Because Plaintiff's Subpoena of Doe's Identity Cannot Survive the Scrutiny Required by the First Amendment, the Subpoena Should Be Quashed.**

The Plaintiff fails the *Dendrite* test demanded of litigants seeking the disclosure of the identities of anonymous speakers; consequently, Plaintiff's request for the issuance of early discovery should be denied.

**1. Plaintiff Has Not Made the Requisite *Prima Facie* Case against Doe.**

Critically, Plaintiff has not provided sufficient *prima facie* evidence that any Defendant infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work. Plaintiff proffers only the following factual allegations: (1) a log of IP addresses that; (2) allegedly correspond to a torrent file swarm in which the Defendant participated. (Complaint, ¶ 19). Plaintiff does not meet its *prima facie* burden with this meager showing.

Instead of the conclusory, generalized showing made to date, Plaintiff must instead present *specific* evidence resulting from the investigation must be submitted for *each* Defendant. At minimum, Plaintiff must present "competent evidence" regarding what the technology upon which it relies actually did in this case. It must document the investigative process actually used to obtain Plaintiff's proffered allegations about each and every Defendant, as well as competent evidence that would permit Defendants (and the Court) to evaluate the reliability and completeness of the log of IP addresses. Without such evidence, the Court must simply take Plaintiff's word for it that its log confirms that the IP addresses provided are the IP addresses collected and that the IP addresses collected are linked to an

actual infringement of Plaintiff's videos. To ensure that no one is being falsely accused of downloading these pornographic movies, such a *prima facie* showing would be reasonable and consistent with the requirements set forth by other courts in similar file sharing cases. Those courts have found the *prima facie* burden met with the submission of screen shots showing the IP addresses of each Defendant (so the court can see that the submitted IP addresses match those discovered during the investigation), copies or real-time capture of the activities of the "licensed technologies" used, proof that the downloaded movie was the same as the Plaintiff's original film, and shots of the P2P server logs to which the Plaintiff claims to have had access. *See, e.g., Elektra Ent. Group, Inc,* 2004 WL 2095581, at *4. Such evidence is already available to the Plaintiff prior to discovery and must be provided as part of its *prima facie* showing. *See Dendrite,* 775 A.2d at 154-55 (presenting allegations of a link between Defendant's posts and stock prices without proof of causation was not sufficient to survive the heightened discovery standard provided by the First Amendment).

Moreover, the allegations of the Complaint do not establish that Plaintiff has any right to sue for statutory damages or attorney fees. The Complaint alleges that Plaintiff has applied for registration of its copyright but does not disclose the *date* on which this application was filed. The fact that Plaintiff alleges application rather than completed registration implies that the application was filed not long before the Complaint was filed. And under 17 U.S.C. 412, a plaintiff cannot sue for statutory damages or attorney fees unless the infringement "commenced after first publication of the work and before the effective date of its registration, unless the registration is made within three months after the first publication of the work." Exhibit A to the Complaint reveals that the downloading for which Plaintiff has subpoenaed Doe's identity occurred no earlier that September 20, 2009.

But there is no allegation as to if or when Plaintiff applied for registration of that image or video. It seems highly unlikely that the registration occurred less than three months before any of the Defendants allegedly infringed the work. Plaintiff should be required, perhaps in response to an order to show cause, to introduce evidence creating a *prima facie* case of entitlement to sue *this* anonymous Defendant for statutory damages and attorney fees.

2.   **Given Plaintiff's Meager Factual Showing and the Immense Harm to Doe that Would Occur if Plaintiff's Subpoena is Enforced, Doe's First Amendment Interests Strongly Outweigh Plaintiff's "Need" for Doe's Identity.**

Even if Plaintiff could marginally satisfy the other steps of the Doe standard required by the First Amendment as set forth in *Dendrite et al.,* the Court must still "balance the defendant's First Amendment right of anonymous free speech against the strength of the *prima facie* case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Dendrite,* 775 A.2d at 760-61. To be sure, creators of pornography have the same protections as other copyright holders, but the pornographic nature of the material that Plaintiff alleges has been improperly downloaded creates a very serious risk of reputational harm resulting from a mistaken identification. And especially given the Plaintiff's improper joinder of over 500 Defendants over whom the Court cannot exercise personal jurisdiction, as well as the lack of transparency about the means by which the Plaintiff generated its list of "infringers," the Court should exercise great caution and prevent Plaintiff from bypassing procedural protections and taking shortcuts to achieve its end.

Although Plaintiff has not elaborated on its motives in bringing suit, the invasive,

sweeping manner in which it was brought indicates that it hopes to leverage the risk of public embarrassment to convince Defendants to quickly capitulate, whether or not they did anything wrong.

Indeed, Plaintiff's lawsuit is consistent with a coordinated strategy of porn industry representatives who have clearly indicated that the coercive threat of public disclosure motivates the recent increase in dragnet copyright cases brought by porn publishers. Discussing this new litigation strategy, Pink Visual, which recently "rall[ied] dozens of adult entertainment studio operators at an unprecedented Content Protection Retreat in Arizona in October to train in ways to combat piracy and defend intellectual property,: stated in an interview with Agence France Presse:

> "It seems like it will be quite embarrassing for whichever user ends up in a lawsuit about using a popular shemale title, Vivas said, using a term that refers to a person who has female features but male genitalia.
> When it comes to private sexual fantasies and fetishes, going public is probably not worth the risk that these torrent and peer-to-peer users are taking."

*Porn Titans Come Together to Expose Pirates,* THE INDEPENDENT, September 27, 2010, available at http://www.independent.co.uk/arts-entertainment/films/porn-titans-come-togetherto-expose-pirates-2090786.html. Other copyright lawyers have concurred that the threat of exposure as downloaders of pornography is well calculated to induce the Doe defendants to settle quickly. John Council, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases,* TEXAS LAWYER, Oct. 4, 2010 ("I would suppose that most people would want to settle rather than being named in a lawsuit of this nature.").

The success or failure of Plaintiff's lawsuit should ultimately rest on the merits of its claim against each individual Doe, not upon the risk of targeting through an insufficiently pleaded and improperly joined "name and shame" campaign. The Court should at minimum

require that Plaintiff resolve the serious shortcomings in its evidentiary showing before the Court authorizes any discovery to proceed.

## CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the basic procedures and due process requirements applicable to all civil litigation. Failure to abide by these procedures is not only contrary to law, it puts the anonymous Defendants at a disadvantage where they will first lose their constitutionally protected anonymity and then find settlement economically more feasible than litigation in a foreign jurisdiction, even though they may have committed no unlawful act or may otherwise have meritorious defenses.

Defendants therefore respectfully urge this Court to quash the subpoena directed to Verizon Wireless to identify the all persons whose IP addresses are attached to the subpoena.

Respectfully submitted,

/s/ David T. Grisamore
David T. Grisamore #34507
53 W Jackson Blvd. Suite 1643
Chicago, IL 60604
Telephone:    (312) 913-3448
Facsimile:    (312) 913-3458
Email:        dgriz67@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2010, the foregoing was filed with the Clerk of Court through ECF. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ David T. Grisamore
David T. Grisamore #34507

NOV-30-2010 TUE 05:03 PM    Case: 1:10-cv-06254 Document #: 14 Filed: 12/02/10 Page 20 of 21 PageID #:89 P. 02/03    FAX NO.    P. 02/03

11/03/2010 14:25 IFAX FIDUCIARYSERVICESFAX@neustar.biz    → Fax Mailbox    ☒004/008
From VZW                    Wed 03 Nov 2010 03:22:48 PM EDT                    Page 4 of 8

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Illinois

| | | |
|---|---|---|
| FIRST TIME VIDEOS, LLC | ) | |
| *Plaintiff* | ) | Civil Action No.  1:10-cv-06254 |
| v. | ) | |
| DOES 1-500 | ) | (If the action is pending in another district, state where: |
| | ) | ) |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Verizon Wireless Attn: Subpoena Compliance/Legal c/o C T Corporation System 208 So LaSalle St Suite 814
Chicago, IL 60604

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: In accordance with the conditions in the attached order, provide the name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of all persons whose IP addresses are listed in the attached spreadsheet. We will be pleased to provide data to you in the most efficient and cost effective format if you let us know what that preferred format is.

| Place: Steele Law Firm, LLC | Date and Time: |
|---|---|
| 161 N Clark St. Ste. 4700 | |
| Chicago, IL 60601 | 12/01/2010 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   10/23/2010

CLERK OF COURT

                                    OR

_____                _____/s/ John Steele_____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   First Time Videos, LLC
, who issues or requests this subpoena, are:

John Steele, Steele Law Firm LLC, 161 N Clark St. Ste. 4700, Chicago, IL 60601, john@steele-law.com;
312-893-5888

NOV-30-2010 TUE 09:09 PM  Case: 1:10-cv-06254 Document #: 14 Filed: 12/02/10 Page 21 of 21 PageID #:90 FAX NO.  P. 03/03

11/03/2010 14:25 IFAX FIDUCIARYSERVICESFAX@neustar.biz → Fax Mailbox  🗵 005/008
From VZW        Wed 03 Nov 2010 03:22:48 PM EDT         Page 5 of 8

## SUBPOENA ATTACHMENT

The times listed below are in Central Daylight Time

| IP | ISP | Date/Time (CDT) |
|---|---|---|
| 75.218.18.78 | Verizon Wireless | 9/20/10 7:02 AM |
| 75.218.177.4 | Verizon Wireless | 9/21/10 9:10 AM |
| 69.99.199.104 | Verizon Wireless | 9/22/10 6:55 AM |