# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FIRST TIME VIDEOS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 6254 |
| | ) | |
| DOES 1-500, | ) | Judge Ruben Castillo |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

First Time Videos, LLC ("FTV") filed this action against 500 unnamed individuals ("Doe Defendants") alleging violations of federal copyright law pursuant to 17 U.S.C. § 101 *et seq.* (R. 1, Compl. ¶ 28.) Presently before the Court are 20 putative Doe Defendants' motions to quash, three motions to dismiss, seven motions to sever, and 11 motions for fees and costs. For the reasons stated below, all motions to quash, all motions to dismiss, and all motions for fees and costs are denied. All motions to sever are at this time denied without prejudice.

### RELEVANT FACTS

FTV is a limited liability company organized under Nevada law. (R. 1, Compl. ¶ 3.) FTV produces adult content including video and photographs which it distributes over the Internet. (*Id.* ¶ 4.) FTV is the exclusive owner of the copyrights at issue. (*Id.* ¶ 3.)

FTV alleges that the Doe Defendants infringed its copyrights through the use of BitTorrent, an Internet data distribution method, to distribute and to offer to distribute its videos and photographs throughout the United States. (*Id.* ¶¶ 7-8.) To clarify the issues on which this case turns, the Court will briefly explain the nature of the BitTorrent protocol and its use.

Traditional file transfer protocols and their associated networks resemble spokes on a wheel: A central hub computer, called a server, sends data directly out to individual users. (*Id.* ¶ 9.) Such protocols slow or even grind to a stop when taxed with large numbers of user requests simultaneously. (*Id.*) Reliable access to data depends entirely upon a server's capacity to operate continuously under the high resource demands of several simultaneous user requests. (*Id.*) In short, any glitch at the server will bring down the data distribution network; if the hub breaks, the wheel falls apart.

By contrast, the BitTorrent protocol is a decentralized method of distributing data. (*Id.* ¶ 10.) The BitTorrent protocol resembles a hive instead of a wheel: Rather than using a hub computer to store and transmit data directly out to individual users, the BitTorrent protocol allows individual users to send data directly to one another. (*Id.*) The BitTorrent protocol uses its central computers, called trackers, to store lists describing "swarms," the groups of individual users who are involved in downloading and distributing particular files. (*Id.* ¶ 11.)

Decentralizing data distribution in this way significantly reduces the resource demands placed on the central computers. To download a file such as a movie or a photograph, an individual user first locates a data file containing both background information about the desired file and "a list of trackers that maintain a list of peers in the swarm that is distributing that particular file." (*Id.* ¶ 12.) Next, the individual user uses a BitTorrent client application to connect to the trackers listed in the data file. (*Id.*) Trackers respond with lists of other individual users (the swarm) to whom the BitTorrent client application automatically connects to begin downloading data from and distributing data to these other users. (*Id.*) The BitTorrent client

application continues to distribute data until the individual user disconnects from the swarm. (*Id.*)

In sum, relatively few data transmissions are sent out from the central tracker to individual users; rather, most data are transmitted between individual users in the swarm. Advances in BitTorrent protocol technology have reduced the importance of centralized trackers still further, as the protocol now allows individual users to act as "mini-trackers," storing data on other individual users as only central trackers could before. (*Id.* ¶ 13.) Consequently, under the BitTorrent protocol, no one computer is subject to as many simultaneous user requests to download data as a traditional file transfer protocol's hub computers are. Additionally, should any individual user experience a glitch while transmitting data, another user in the swarm is available to take its place to resume data transmission to the requesting individual user.

The decentralized character of the BitTorrent protocol, which makes it a robust and efficient means of distributing data, also "acts to insulate it from efficient anti-piracy measures," such as actions to enjoin traditional file transfer protocols' central servers from unlawfully distributing copyrighted content. (*Id.* ¶ 16.) Indeed, swarms for popular files can include tens of thousands of unique individual users, commonly including users "from many, if not every, state in the United States and several countries around the world," who anonymously transmit files among themselves. (*Id.* ¶ 14.) However, individual users must transmit identifying information in the form of their Internet Protocol ("IP") addresses—identification numbers assigned to every device connected to the Internet—before they can receive or transmit any data. (*Id.*) Though anonymous, individual users are not necessarily unidentifiable because their IP addresses are associated with their Internet service providers ("ISPs") and, by extension, with their Internet service accounts. These Internet service accounts, in turn, are associated with account holders'

names and addresses. Hence, an IP address can be traced to information leading to the identities of individual users in a BitTorrent swarm.

## PROCEDURAL HISTORY

On September 29, 2010, FTV filed its original complaint against 500 Doe Defendants who, according to FTV, used BitTorrent to reproduce and distribute eight of FTV's videos without FTV's authorization or license, thereby infringing FTV's copyright. (*Id.* ¶ 17; *see* R. 1, Compl., App.) At the time FTV filed its complaint, only the individual users' IP addresses were known to FTV as addresses assigned to devices from which people entered BitTorrent swarms and received and transmitted FTV's copyrighted materials. Because of the size of the BitTorrent swarms and the decentralized nature of the BitTorrent protocol, FTV alleged that such unlawful distribution of its copyrighted works occurred in every jurisdiction in the United States, including the Northern District of Illinois. (*Id.* ¶ 7.)

On October 7, 2010, the Court dismissed the original complaint without prejudice to the filing of a proper amended complaint which names individual defendants.[1] (R. 10, Minute Entry.) The same day, the Court granted FTV permission to take limited discovery to learn the identities of the Doe Defendants. (R. 12, Order Granting Pl.'s Ex Parte Mot. for Leave to Take Disc.) Subpoenas were issued to Doe Defendants' ISPs to reveal their names, addresses, telephone numbers, email addresses, and Media Access Control (MAC) addresses. Upon receiving notice of the subpoenas from their ISPs, several persons who claim to be associated

---

[1] FTV's original complaint remains operative for purposes of establishing the record and analysis for this memorandum opinion.

with IP addresses listed in FTV's complaint ("Putative Defendants")[2] moved to quash the

subpoenas. Twenty-one Putative Defendants have filed motions to quash these subpoenas, 20 of

which remain after FTV's dismissal of certain Doe Defendants filed June 16, 2011.[3] Four

Putative Defendants have filed motions to dismiss, three of which remain.[4] Eight Putative

Defendants have filed motions to sever claims against them from this case, seven of which

remain.[5] Eleven Putative Defendants have filed motions for reasonable attorneys' fees and costs

as prevailing parties upon the quashing of subpoenas or their dismissal from this action.[6]

---

[2] For purposes of clarity in discussion and analysis, "Putative Defendants" refers to persons who claim to be associated with IP addresses in FTV's complaint and making motions in this Court, while "Doe Defendants" refers to all persons associated with all IP addresses in FTV's complaint.

[3] *See* R. 13, Joel Shapiro (IP address listed: 71.93.210.243); R. 14, 3 John Does (IP addresses listed: 75.218.18.78, 75.218.177.4, and 69.99.199.104); R. 18, John Doe (IP address listed: 173.19.225.147); R. 25, John Doe (IP address listed: 24.18.103.161); R. 48, John Doe (IP address listed: 24.10.155.152); R. 51, John Doe (IP address listed: 67.161.252.73); R. 67, Bruce Wiancko (No IP address listed); R. 85, John Doe (IP address listed: 173.78.78.231); R. 88, John Doe (IP address listed: 71.180.190.151); R. 91, John Doe (IP address listed: 173.74.16.219); R. 97, Rodrigo M. Dill (IP address listed: 98.162.179.251); R. 124, John Doe (IP address listed: 98.216.9.157); R. 139, John Doe (IP address listed: 24.30.110.31); R. 140, John Doe (IP address listed: 67.170.124.201); R. 141, John Doe (IP address listed: 69.140.162.127); R. 142, John Doe (IP address listed: 98.114.66.243); R. 143, John Doe (IP address listed: 98.234.105.156); R. 144, John Doe (IP address listed: 173.76.172.140).

[4] *See* R. 27, John Doe (IP address listed: 98.232.188.168); R. 98, Rodrigo M. Dill (IP address listed: 98.162.179.251); R. 127, John Doe (IP address listed: 98.216.9.157).

[5] *See* R. 98, Rodrigo M. Dill (IP address listed: 98.162.179.251); R. 139, John Doe (IP address listed: 24.30.110.31); R. 140, John Doe (IP address listed: 67.170.124.201); R. 141, John Doe (IP address listed: 69.140.162.127); R. 142, John Doe (IP address listed: 98.114.66.243); R. 143, John Doe (IP address listed: 98.234.105.156); R. 144, John Doe (IP address listed: 173.76.172.140).

[6] *See* R. 18, John Doe (IP address listed: 173.19.225.147); R. 25, John Doe (IP address listed: 24.18.103.161); R. 27, John Doe (IP address listed: 98.232.188.168); R. 91, John Doe (IP address listed: 173.74.16.219); R. 127, John Doe (IP address listed: 98.216.9.157); R. 139, John Doe (IP address listed: 24.30.110.31); R. 140, John Doe (IP address listed: 67.170.124.201); R. 141, John Doe (IP address listed: 69.140.162.127); R. 142, John Doe (IP address listed: 98.114.66.243); R. 143, John Doe (IP address listed: 98.234.105.156); R. 144, John Doe (IP address listed: 173.76.172.140).

# ANALYSIS

## I.   Motions to Quash Under Federal Rule of Civil Procedure 45

Twenty-one Putative Defendants have filed motions to quash the subpoenas served on

their ISPs. Twenty of these defendants remain after FTV's dismissal of certain Doe Defendants

filed June 16, 2011. (R. 132, Pl.'s Notice of Dismissal.) A subpoena may be quashed or

modified under Federal Rule of Civil Procedure 45(c)(3) if compliance with the subpoena

"requires disclosure of privileged or other protected matter, if no exception or waiver applies."

Fed. R. Civ. P. 45(c)(3)(A)(iii). Pursuant to Rule 45(d)(2), when subpoenaed information is

withheld on a claim of privilege, that claim of privilege must be express and it must "describe the

nature of the withheld [information] in a manner that, without revealing information itself

privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2).

The Doe Defendants assert three principal arguments in support of their motions. First,

they maintain that the subpoenas should be quashed because the subpoenas "require[] disclosure

of privileged or other protected matter" under Rule 45(c), including information that would

disclose the identities of the Putative Defendants and infringe on their First Amendment right to

engage in anonymous speech. (*See, e.g.*, R. 14, John Does 75.218.18.78, 75.218.177.4, and

69.99.199.104's Mot. to Quash Subpoena.) Second, they contend that their motion should be

granted because the subpoenas subject them to an undue burden under Rule 45(c). (*See, e.g.*, R.

51, John Doe 67.161.252.73's Mot. to Quash and/or Vacate Subpoena.) Third, they argue that

they did not engage in the alleged illegal conduct infringing FTV's copyright, and FTV should

therefore be denied the Putative Defendants' identifying information. (*See, e.g.*, R. 67, Bruce

Wiancko's Mot.)

6

**A.  Motions to quash on the basis of required disclosure of "privileged or other protected matter," infringing the First Amendment right to engage in anonymous speech**

The Putative Defendants first argue that the subpoenas should be quashed because compliance with the subpoenas would compel the disclosure of their names and addresses, information which they contend is protected under a constitutional right to privacy. (*See, e.g.*, R. 13, Joel Shapiro's Mot. to Quash Subpoenas.)  In doing so, they invoke Federal Rule of Civil Procedure 45(c), which requires a court to quash a subpoena if it "requires disclosure of privileged or other protected matter."  Fed. R. Civ. P. 45(c)(3)(A)(iii).  The Court concludes that the identifying information subpoenaed neither qualifies for protection as "privileged" nor is otherwise protected under the First Amendment right to engage in anonymous speech on the Internet.  Consequently, the Doe discovery subpoenas will not be quashed on the basis that compliance will require disclosure of "privileged or other protected matter."

The Court concludes that the subpoenaed information does not qualify for protection as privileged for two reasons.  First, subpoenas can compel the production of even the most widely-accepted forms of privileged and confidential information, such as journalistic privilege or doctor-patient confidentiality. *See, e.g., In re Fitch, Inc.*, 330 F.3d 104, 111 (2d Cir. 2003) (finding no abuse of discretion in lower court's refusal to quash a subpoena on the basis of journalistic privilege under New York's shield law); *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926-27 (7th Cir. 2004) (finding no HIPAA privilege protects hospitals' abortion records from disclosure under a subpoena, though quashing subpoenas because compliance with the subpoena is an undue burden on the hospital).  In both *In re Fitch* and *Northwestern Memorial Hospital*,

7

the parties seeking to quash subpoenas did not prevail despite confidentiality provisions in relevant statutes.

To assert their claim of privilege, some of the Putative Defendants raise a provision of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2702(a)(1), as a defense to the disclosure of their identifying information. (See, e.g., R. 51, John Doe 67.161.252.73's Mot. to Quash and/or Vacate Subpoena.) Section 2702(a)(1) provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." The subpoenas at issue, however, do not seek the contents of a communication while in electronic storage by the target ISPs. Rather, the subpoenas seek the Putative Defendants' names, addresses, telephone numbers, email addresses, and Media Access Control (MAC) addresses. As such, the Putative Defendants' reliance on § 2702(a)(1) is inapposite. The information under subpoena pertains to customer records, the disclosure of which is restricted by the ECPA at 18 U.S.C. § 2702(a)(3). Yet the ECPA also provides, at 18 U.S.C. § 2702(c)(6), an exception by which an ISP "may divulge a record or other information pertaining to a subscriber or other customer . . . to any person other than a government entity." 18 U.S.C.A § 2702(c)(6) (West 2011). Thus, the confidentiality provision in the relevant statute also includes an exception permitting the disclosure of identifying information to non-government entities. Because FTV is not a government entity, disclosure of the identifying information subpoenaed to FTV is permitted by the ECPA and therefore not privileged. Accordingly, the Putative Defendants' claims of statutory privilege to prevent FTV from obtaining their identifying information are unavailing.

Second, courts have consistently held that Internet subscribers do not have a reasonable expectation of privacy in their subscriber information—including name, address, phone number, and email address—as they have already conveyed such information to their ISPs. *See Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212, 216 (D.D.C. 2010).[7] Because they have already shared their subscriber information with their ISPs in order to set up their Internet accounts, the Putative Defendants likewise have no reasonable expectation of privacy in the same information now sought in the subpoenas. This information is therefore not privileged. Accordingly, the subpoenas seeking to obtain this information are not subject to being quashed under Rule 45.

Regarding the Putative Defendants' argument that disclosure of their identities would infringe on their First Amendment rights, the Court recognizes that the Putative Defendants' First Amendment right to anonymous speech on the Internet is implicated by disclosure of the identifying information sought in the subpoenas. This information, however, is not thereby "protected" for purposes of Rule 45(c)(3)(A)(iii). As a preliminary matter, "[i]t is now well established that the Constitution protects the right to receive information and ideas. This freedom of speech and press necessarily protects the right to receive" and view media, including videos. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (citations and internal quotations omitted) (invalidating a Georgia statute criminalizing the private possession of obscene

---

[7] Indeed, the Putative Defendants moving this Court to quash subpoenas served on their ISPs for their identifying information while filing under their own names and addresses reveal just how little reasonable expectation of privacy may exist when conveying such information to any third party. Having failed to file anonymously or pseudonymously, these Putative Defendants have very nearly rendered moot their own motions to quash. *See* R. 13, Joel Shapiro (IP address listed: 71.93.210.243); R. 67, Bruce Wiancko (No IP address listed); R. 97, Rodrigo M. Dill (IP address listed: 98.162.179.251).

materials, because "[i]f the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch"). The Supreme Court has recognized that the First Amendment also protects anonymous speech. *Buckley v. Am. Constitutional Law Found.* 525 U.S. 182, 200 (1999) (holding a Colorado elections law requiring petition circulators to wear name badges constituted an "injury to speech"). Additionally, it is well-established that the First Amendment's protection extends to speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 870-71 (1997) (finding "no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]"). Civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).

At the same time, anonymous speech, like that from identifiable sources, does not enjoy absolute protection. Rather, certain classes of speech, such as defamation, libel, and obscenity, are deemed to be beyond the purview of the First Amendment. *See Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). Indeed, copyright infringement is not protected by the First Amendment. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (holding that the substantial public import of the subject matter of copyrighted materials at issue, President Ford's memoirs, would not excuse unauthorized reproduction of the memoirs if the reproduction did not qualify for an exception under the general standards of fair use); *see also Arista Records v. Does 1-19*, 551 F. Supp. 2d 1, 9 (D.D.C. 2008) ("[A] Doe defendant who allegedly used the internet to unlawfully download and disseminate copyrighted sound recordings, has a minimal expectation of privacy in remaining anonymous."). Rather, "defendants' First Amendment right to remain anonymous must give way to plaintiffs' right to

use the judicial process to pursue what appear to be meritorious copyright infringement claims." *Arista Records*, 551 F. Supp. 2d at 9 (internal citations omitted).

The Court further concludes that any First Amendment protections for anonymous speech in this instance of alleged copyright infringement are limited under the circumstances, by analogy to other district courts' persuasive reasoning. In *Sony Music Entertainment, Inc. v. Does 1-40*, a music copyright infringement case, the court recognized that "a file sharer may be expressing himself or herself through the music selected and made available to others." 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004). "Although this is not political expression entitled to the broadest protection of the First Amendment, the file sharer's speech is still entitled to some level of First Amendment protection." *Id.* (citations and internal quotations omitted). Surveying federal district and state court cases, the court went on to discuss five factors to consider in weighing the need for disclosure of subpoenaed identifying information from ISPs regarding subscribers: "(1) a concrete showing of a prima facie claim of actionable harm, (2) specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy." *Id.* at 564-65 (citations omitted).

Likewise, this Court concludes that a BitTorrent user may be expressing himself or herself through the video and photographic files selected and made available to others in a manner that may be entitled to some level of First Amendment protection. But as in *Sony*, each of the five factors weighs against the Putative Defendants and in favor of disclosing their identifying information in compliance with the subpoenas. First, FTV has made a concrete showing of a prima facie claim of actionable harm under a theory of copyright infringement: "(1)

11

ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*, 499 U.S. 340, 361 (1991). FTV has alleged that each of its creative works at issue in this action "has an application for registration pending in the United States Copyright Office" and "contains a copyright notice and a warning regarding unauthorized reproduction and redistribution." (R. 1, Compl. ¶¶ 22-23.) FTV has also adequately pleaded the Doe Defendants' infringement of FTV's copyrighted materials, alleging that "each Defendant copied, reproduced, and distributed [FTV's] owned and copyrighted work as described on Exhibit A." (*Id.* at ¶ 24.) FTV has submitted supporting evidence in the Exhibit attached to its complaint, specifying the dates and times at which Doe Defendants allegedly copied its copyrighted materials, as well as the IP addresses assigned to the Doe Defendants at the time of copying.

Second, FTV's discovery request is sufficiently specific to establish reasonable likelihood that it will lead to identifying information that would make service possible upon those Doe Defendants who could be sued in federal court. FTV seeks the identifying information for particular Internet users who allegedly downloaded their copyrighted material using the BitTorrent protocol at specific times and dates, as detailed in Exhibit A to their complaint. (R. 1, Ex. to Compl.) Such information is necessary to serve process on any Doe Defendants to be properly brought into this case.

Third, FTV has detailed the steps it has taken to learn the Doe Defendants' true identities, including obtaining IP addresses at the date and time of the alleged copyright infringing activities, tracing the IP addresses to specific ISPs, and making copies of the materials each Doe Defendant allegedly copied, distributed, or made available for distribution to verify that such

materials are FTV's copyrighted materials. (*See* R. 6, Pl.'s Mem. of Law in Supp. of *Ex Parte*
Mot. for Leave to Take Limited Disc. Prior to Rule 26(f) Conference at 7-8.) FTV avers it has
done all it can to learn the identities of the Doe Defendants without limited discovery from the
ISPs, who can identify each Doe Defendant by name through the IP addresses by reviewing its
subscriber activity logs.

Fourth, FTV has demonstrated the central need for the identifying information
subpoenaed to advance their copyright infringement claims. Without this information, FTV
would not be able to pursue litigation or an eventual remedy because they would not be able to
serve any defendant with process.

Finally, as discussed in Section I.A, *supra*, Internet subscribers do not have a reasonable
expectation of privacy in their subscriber information as they have already conveyed such
information to their ISPs. Taken together, these five factors suggest that the Putative
Defendants' First Amendment right to remain anonymous in speech over the Internet must give
way to FTV's right to use the judicial process to pursue a prima facie copyright infringement
claim. As in *Sony*, all Doe Defendants did enjoy a First Amendment right to express themselves
anonymously on the Internet through, *inter alia*, anonymously collecting the video and
photographic files of their choosing. Notwithstanding the potential for discomfort for future
named defendants due to the nature or content of FTV's copyrighted materials, the alleged
infringement of FTV's copyright means that the Putative Defendants' First Amendment rights to
privacy or anonymity are at low ebb. Additionally, to deny FTV identifying information about
the Putative Defendants would leave FTV unable to serve defendants with process and without
any remedy to address the ongoing infringement of its copyrights. Thus, the Putative

Defendants' arguments for a First Amendment-protected right to anonymous speech on the Internet cannot overcome FTV's exclusive rights under copyright law. Therefore, the Putative defendants' identifying information sought in the subpoenas is not "otherwise protected" for purposes of Rule 45. The Putative Defendants' motions to quash subpoenas seeking their identifying information and lifting their anonymity are therefore denied.

### B.     Motions to quash on the basis of an undue burden

The Putative Defendants next argue that compliance with the subpoenas subjects them to an undue burden. Rule 45(c) provides that courts must quash a subpoena where it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). The subpoenas served on Doe Defendants' ISPs do not subject the Doe Defendants to an undue burden; if anyone may move to quash these subpoenas on the basis of an undue burden, it is the ISPs themselves, as they are compelled to produce information under the subpoena. The Putative Defendants are not so compelled. Thus, the Putative Defendants' assertion of an undue burden amounts to an argument that the subpoenas compel them to litigate in a forum in which they should not be subject to personal jurisdiction. As discussed below, such personal jurisdiction arguments are premature because the Putative Defendants have not been named parties to this lawsuit. As such, the Putative Defendants are under no obligation either to produce information under subpoena or to litigate in this jurisdiction. Consequently, the Putative Defendants have not asserted any hardship due to the subpoenas, let alone undue hardship. For this reason, the Putative Defendants' motions to quash subpoenas on the basis of an undue burden are denied.

### C.     Motions to quash on the basis of general denial of liability

The Putative Defendants' final purported basis for quashing subpoenas, a general denial of liability, finds no support in Rule 45(c). Under Rule 45(c), courts must quash a subpoena where it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or where it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). A general denial of liability is not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit. *See, e.g.*, *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co.*, 736 F. Supp. 2d at 215 ("[T]he merits of [the] case are not relevant to the issue of whether the subpoena is valid and enforceable."). Because general denials of liability are not a basis on which subpoenas may be quashed under Rule 45, subpoenas served on Doe Defendants' ISPs will not be quashed. The Putative Defendants' motions are therefore denied.

Other district courts dealing with the issue of motions to quash subpoenas served on unnamed defendants' ISPs have arrived at the same conclusion. This Court's esteemed colleague, Judge Beryl Howell in the District of Columbia, recently confronted the same issue and concluded that "[a] general denial of engaging in copyright infringement is not a basis for quashing" a subpoena. *Voltage Pictures, LLC v. Does 1-5,000*, No. 10-0873, 2011 WL 1807438, at *2 (D.D.C. May 12, 2011). In *Voltage Pictures*, the plaintiff alleged that unnamed individuals used BitTorrent to download and distribute the plaintiff's copyrighted motion picture, *The Hurt Locker. Id.* at *1. Judge Howell, after considering the same arguments made by the Putative Defendants, refused to quash the subpoenas served on the individuals' ISPs on the basis of the individuals' general denial of liability. *Id.* at *2. Judge Howell reasoned that quashing the subpoenas "would deny the plaintiff access to the information critical to bringing [the parties]

15

properly into the lawsuit to address the merits of both the plaintiff's claim and their defenses."
*Id.* Without the identifying information to name the Doe Defendants as parties to the lawsuit, the
plaintiff would not have "the opportunity to contest the merits and the veracity of their defenses."
*Id.*

Likewise, this Court will not quash subpoenas on the basis of denials of liability because
such denials are not relevant as to the validity or enforceability of a subpoena, but rather should
be presented and contested once parties are brought properly into the suit. Additionally, the
Court notes that granting the Putative Defendants' motions to quash theses subpoenas would
deny FTV access to the identifying information critical to bringing the Putative Defendants
properly into the suit to address the merits of both FTV's allegations and the named defendants'
defenses and denials. Without the subpoenaed identifying information, FTV would never have
the opportunity to contest the merits of any defendant's denial. If the Court quashed the
subpoenas, it would wholly prevent FTV from seeking any remedy for its alleged copyright
violations. On the other hand, allowing the subpoenas to stand still leaves the Doe Defendants a
full opportunity to deny their liability and to raise any other defenses at the appropriate time if
they are named as defendants in this case.

The Putative Defendants have not yet been brought into this suit, and their general denials
of liability are not relevant as to the validity or enforceability of the subpoenas they seek to
quash. Thus, their motions to quash the subpoenas on the basis of general denials of liability are
denied.

## II.     Motions to dismiss

### A. Motions to dismiss based on lack of personal jurisdiction

Four Putative Defendants have filed motions to dismiss based on lack of personal jurisdiction; three of these motions remain after FTV's dismissal of certain Doe Defendants filed June 16, 2011. (R. 132, Pl.'s Notice of Dismissal.) Indeed, all but one Putative Defendant asserts that the lack of personal jurisdiction should persuade this Court to find in their favor with respect to each motion. In support of this argument, the Putative Defendants provide affidavits or other declarations that they do not reside, do business, or otherwise have sufficient contacts with the Northern District of Illinois to establish personal jurisdiction. Such assertions, however, will be relevant once the Putative Defendants are named as parties in this action, but not before. Defendants cannot be dismissed under Federal Rule of Civil Procedure 12(b)(2) from a lawsuit to which they are not yet parties.

## B. Motions to dismiss for improper joinder

Two Putative Defendants have filed motions to dismiss for improper joinder; one of these motions remains after FTV's dismissal of certain Doe Defendants filed June 16, 2011. (R. 132, Pl.'s Notice of Dismissal.) Under Federal Rule of Civil Procedure 21, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. The proper remedy for misjoinder is severance. *Id.* ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.") Severance of parties creates separate actions containing the same claims against the same Putative Defendants. Thus the remaining motion to dismiss for improper joinder is denied and will be construed in this Court as a motion to sever.

## III. Motions to sever

Eight Putative Defendants have filed motions to sever claims against them from those against other parties; seven of these motions remain after FTV's dismissal of certain Doe Defendants filed June 16, 2011. (R. 132, Pl.'s Notice of Dismissal.) These motions assert that joinder is improper because FTV has not met the requirements for permissive joinder under Federal Rule of Civil Procedure 20, creating a risk of unfairness and denial of individual justice to each defendant. (*See* R. 14, John Doe's Mot. to Quash Subpoena at 8.) This argument is unavailing at this stage of the litigation.

Under Rule 20, "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In addition to the two requirements of Rule 20(a)(2), the Court also considers whether joinder would prejudice any party or result in needless delay. At root, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Though not binding on this Court, in many courts such requirements for joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action." *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). An examination of each of these requirements shows that joinder is proper at this time.

FTV has made well-pleaded allegations to satisfy Rule 20(a)(2)(A), which provides that joinder is proper if "any right to relief is asserted against [the joined defendants] jointly,

18

severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." This test is flexible; courts are encouraged to seek the "broadest possible scope of action consistent with fairness to the parties." *Gibbs*, 383 U.S. at 724. FTV has made well-pleaded allegations that the relief they seek arises out of the same transaction, occurrence, or series of transactions. FTV has alleged that the Doe Defendants have each used BitTorrent protocol to reproduce its copyrighted materials without license or permission. Specifically, as peers in the BitTorrent swarms associated with movie or photograph, the Putative Defendants are alleged to have reproduced FTV's copyrighted materials and "continue[d] [to] distribut[e] data to other peers in the swarm" until disconnecting their BitTorrent client. (R. 1, Compl. ¶ 12.) Based on these allegations, each Doe Defendant is a possible source of FTV's copyrighted materials, and each may be responsible for distributing the same to any other Putative Defendant. While the Doe Defendants are alleged to have copied and distributed eight separate copyrighted works, this Court will consider the allegations under a flexible test to constitute a series of transactions of FTV's copyrighted works, as required under Rule 20(a)(2)(A), as such a finding remains consistent with fairness to the parties. *See London-Sire Records v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (consolidating multiple record companies' copyright infringement claims for distinct music files where they involved "similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their [I]nternet service provider").

FTV's well-pleaded allegations also satisfy Rule 20(a)(2)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." On

the legal merits, FTV will have to establish the validity of its copyrights in the materials at issue and the exclusive rights reserved to themselves as copyright holders. Against the Doe Defendants, FTV has alleged the use of the BitTorrent protocol to reproduce and distribute its copyrighted materials. Consequently, the factual inquiry into the method used in any alleged copyright infringement will be substantially identical, as the methods FTV will use to investigate, uncover, and collect evidence about any infringing activity will be the same as to each Doe Defendant. The Court recognizes that each Doe Defendant may later present different factual circumstances to support individual legal defenses. Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation.

Finally, joinder at this stage is consistent with fairness to the parties and in the interest of convenience and judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for both FTV and any future named defendants. Joinder does not create any unnecessary delay nor does it prejudice any party. Rather, severance is more likely to likely to cause delays and prejudice FTV and future named defendants alike. Delays are likely to occur, and the resources of the courts to be substantially taxed, in the event that Putative Defendants were severed, as each resulting individual case would require its own proceedings, including its own motion to issue subpoenas to identify the names and addresses associated with the Putative Defendants' IP addresses. Additionally, FTV would be prejudiced if severance were granted, as each of the 500 resulting claims would require its own filing fees, a multiplication of expense that would further inhibit FTV's ability to protect its legal rights. Such obstacles would make it

highly unlikely FTV could protect its copyrights in a cost-effective manner.[8] Future named defendants would also be disadvantaged if severance were granted, as joined defendants enjoy the benefit of seeing what defenses, if any, other defendants may assert to avoid liability. *See id.* at 161 (reasoning that joinder "allowed the defendants to see the defenses, if any, that other John Does have raised"). Any future named defendant will still be considered individually for any ruling on the merits of FTV's claims, belying the notion that joinder will deny any defendant individual justice. Finally, future named defendants will retain the right to raise their arguments in favor of severance at a later time.

The Court has little reason to believe that any risk arises of unfairness or denial of individual justice to each defendant at this stage in the litigation. Once the Doe Defendants have been properly named parties to this lawsuit, the case against each of them will yet be individually considered for purposes of any ruling on the merits. At this stage, joinder of the defendants promotes judicial economy while protecting the interests of the parties for a just, speedy, and inexpensive outcome. Joinder at this stage is therefore consistent with fairness to the parties. Additionally, the two requirements of permissive joinder under Rule 20(a)(2) have been satisfied. The motions to sever are therefore denied without prejudice, and any defendants may raise them again as appropriate upon being named parties to this suit. Severance before that time is premature.

## IV.    Motions for fees and costs

---

[8] Indeed, many Putative Defendants themselves acknowledge the tremendous expense of litigating copyright infringement claims against 500 Doe Defendants individually. *See, e.g.*, R. 14, John Does 75.218.18.78, 75.218.177.4, and 69.99.199.104's Mot. to Quash Subpoena, at 10.

Pursuant to 17 U.S.C. § 505, 11 Putative Defendants have filed motions for reasonable attorneys' fees and costs as prevailing parties upon the quashing of subpoenas or dismissal or severance from this action. In civil copyright infringement cases, 17 U.S.C. § 505 provides explicit statutory authority to award attorneys' fees and costs: "[T]he court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C.A. § 505 (West 2011). Congress has provided for awarding attorneys' fees to the prevailing party in numerous other statutes as well[9], and the courts have interpreted these statutory provisions consistently with respect to who is a "prevailing party." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 n. 4 (2001) ("We have interpreted these fee-shifting provisions consistently . . . and so approach the nearly identical provisions at issue today.") Typically, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-279 (1st Cir. 1978)). In *Hensley,* the Supreme Court recognized the statutory provision to award fees and costs in federal civil rights actions, 42 U.S.C. § 1988, as a "generous formulation that brings the [party] only across the statutory threshold." *Id.*

Following *Buckhannon,* the Court concludes today that the statutory provision under which the Putative Defendants bring their motions for attorneys' fees and costs, 17 U.S.C. § 505,

---

[9] *See, e.g.,* the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e–5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 1973 l (e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988. See generally *Marek v. Chesny,* 473 U.S. 1, 43–51 (1985) (Appendix to opinion of Brennan, J., dissenting).

presents a similarly generous statutory threshold to determine who is the prevailing party as that of § 1988. This conclusion finds support in other district courts as well. *See Chambers v. Time Warner, Inc.*, 279 F. Supp. 2d 362, 365 n.3 (S.D.N.Y. 2003) ("Although *Buckhannon* concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disability Act of 1990, it is clear that *Buckhannon* applies with equal force to the fee-shifting provision of the Copyright Act [§ 505]."). Yet the Putative Defendants cannot meet even this generous threshold to be considered prevailing parties. The Putative Defendants' motions to quash subpoenas, to dismiss them from this action, and to sever them from this action are denied. Accordingly, they have not yet obtained any relief in this action. Thus, they cannot be prevailing parties for purposes of § 505. Consequently, the Putative Defendants are not entitled to any fees or costs. The Putative Defendants' motions for fees and costs are therefore denied.

## CONCLUSION

For the reasons stated above, all motions to quash subpoenas, motions to dismiss, and motions for fees and costs (R. 13; R. 14; R. 18; R. 25; R. 27; R. 48; R. 51; R. 67; R. 85; R. 88; R. 91; R. 97; R. 98; R. 124; R. 127; R. 139; R. 140; R. 141; R. 142; R. 143; R. 144) are DENIED. Motions to sever (R. 98; R. 139; R. 140; R. 141; R. 142; R. 143; R. 144) are at this time DENIED without prejudice.

Entered:

Judge Ruben Castillo
United States District Court

Dated: August 9, 2011

23